The UNIVERSITY OF TEXAS
SYSTEM, Appellant,

v.

Susie MELCHOR, Appellee.

No. A14–83–859–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 13, 1985.

Rehearing Denied July 18, 1985.

Jim Mattox, Atty. Gen., Susan German, Asst. Atty. Gen., Lou McCreary, Atty. General's Office, Austin, for appellant.

Leonard A. Cruse, of Martin, Carmona, Cruse & Micks, Galveston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

OPINION

DRAUGHN, Justice.

This case involves the apportionment of attorneys' fees in a suit to recover a subrogated workers' compensation claim. Appellee Susie Melchor ("the claimant") suffered injuries on her job and initiated a

workers' compensation claim against her employer, the University of Texas System ("UT"). UT settled this claim for $19,927. Subsequently, the claimant received a $50,000 settlement from a third party defendant, out of which UT recovered 100% of its subrogated workers' compensation payment of $19,927. In its sole point of error, UT alleges the trial court abused its discretion in granting the claimant's attorney $5000 and UT's attorney only $742.33 for their respective efforts in the suit against the third party defendant. We affirm the trial court's judgment regarding the apportionment of attorneys' fees.

The Texas Workers' Compensation Act provides for an award of attorneys' fees when an association obtains a subrogated recovery from a third party. TEX.REV. CIV.STAT.ANN. art. 8307, § 6a (Vernon Supp.1985).[1] The pertinent part of § 6a reads as follows:

> However, when the claimant is represented by an attorney, and the association's interest is not actively represented by an attorney, the association shall pay such fee to the claimant's attorney not to exceed one-third (⅓) of said subrogation recovery or as may have been agreed upon between the claimant's attorney and the association or in the absence of such agreement the court shall allow a reasonable attorney's fee to the claimant's attorney for recovery of the association's interest which in no case shall exceed thirty-three and one-third per cent (33⅓%) payable out of the association's part of the recovery.

> . * * * * * *

> If the association obtains an attorney to actively represent its interest and if the attorney actively participates in obtaining a recovery, the court shall award and apportion an attorney's fee allowable out of the association's subrogation recovery between such attorneys taking into account the benefit accruing to the association as a result of each attorney's

service, the aggregate of such fees not to exceed thirty-three and one-third per cent (33⅓%) of the subrogated interest. . . .

The preceding language implies three possible situations:

(1) the claimant's attorney represents both the claimant and the association because the association has no attorney;

(2) the association hires an attorney who does not *actively* represent its interest; or

(3) the association hires an attorney who *actively* represents its interests and participates in obtaining a recovery.

*Hartford Insurance Co. v. Branton & Mendelsohn, Inc.*, 670 S.W.2d 699, 701 (Tex.App.—San Antonio 1984, no writ).

An examination of the record in the present case reveals (1) that the claimant's attorney, Mr. Leonard Cruse, was primarily responsible for the recovery of the subrogated amount, and (2) that UT's attorney, the Texas Attorney General's office, also actively participated in the lawsuit, although to a much lesser extent. Therefore, this case falls into the third situation listed above and requires an apportionment of attorneys' fees between the two attorneys out of UT's subrogated recovery.

Several cases have addressed the issue of apportioning fees under art. 8307, § 6a: *Hartford Insurance*, 670 S.W.2d at 699; *Houston General Insurance Co. v. Metcalf*, 642 S.W.2d 79 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *Union Carbide Corp. v. Burton*, 618 S.W.2d 410 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *International Insurance Co. v. Burnett and Adhers, Assoc.*, 601 S.W. 2d 199 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.); *Insurance Company of North America v. Stuebing*, 594 S.W.2d 565 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Lee v. Westchester Fire Insurance Co.*, 534 S.W.2d 392 (Tex.Civ.App. —Amarillo 1976, no writ). These cases re-

---

1. TEX.REV.CIV.STAT.ANN. art. 8309d, § 7 (Vernon Supp.1985) applies art. 8307, § 6a, specifically to University of Texas employees.

veal that a proper apportionment turns upon the facts of the individual situation, requiring an assessment of the contributions of each attorney towards recovery of the subrogation amount.

In the present case, Mr. Cruse established a theory of liability where liability initially was uncertain. He also propounded interrogatories, attended several depositions, defended a motion for summary judgment, incurred $2,697.92 in expenses, and assumed the primary responsibility for negotiating the settlement with the third party. On the other hand, UT's attorney issued correspondence, discussed the case by telephone with various UT employees, filed a plea of intervention, reviewed UT files, responded to Mr. Cruse's requests for information, and reviewed pleadings and other documents generated by Mr. Cruse. A comparison of the respective roles of the two attorneys shows that Mr. Cruse was primarily responsible for recovery of the subrogation amount. The UT attorney, while clearly active, functioned in a supportive, ancillary capacity.

UT asserts that the claimant's attorney should receive nothing because of the deterioration of his working relationship with the UT System toward the end of the case. In fact, UT claims that it received *no* benefit from Mr. Cruse's efforts because at times he appeared to behave in a manner adverse to UT's interests. While the record contains evidence of friction between Mr. Cruse and UT or its attorney during the lawsuit, the contention that UT received *no* benefit from Mr. Cruse's work is without merit. There is ample evidence that Mr. Cruse ultimately procured the subrogation recovery from the third party. Furthermore, it is unlikely that UT would have recovered anything solely upon the work of the assistant attorney general handling the case, since the record indicates that the Attorney General's office operated only in a supportive role.

Alternatively, UT asserts that the evidence *is insufficient* to support the amount of fees Mr. Cruse received, because the court did not require him to list the number of hours he spent on the case or to state the value of his time. The case of *Insurance Company of North America,* 594 S.W.2d at 565, supports UT's position. The Fort Worth Court of Appeals in that case reversed and remanded because the claimant's attorney failed to present proof of the value of his time. Thus, the Fort Worth Court places the determination of attorneys' fees under art. 8307, § 6a, on an hour-times-rate basis. However, the San Antonio Court of Appeals in *Hartford Insurance,* 670 S.W.2d at 703, refutes this method, saying that the statute intended a contingent fee arrangement up to the statutory limit of one-third (⅓) of the subrogated recovery; therefore, proof of the value of time spent is not necessary. We agree with the latter approach and decide that the claimant's attorney need not submit a detailed account of specific hours expended and hourly rate to justify his fees under art. 8307, § 6a.

As for the specific division of fees between the attorneys in this lawsuit, the apportionment heavily weighted in favor of the claimant's attorney seems extreme under the circumstances, despite the fact that the claimant's attorney was primarily responsible for recovering the subrogation amount. However, we note a significant absence of statutory guidelines to assist the trial court in making such divisions under art. 8307, § 6a. More definitive standards are needed to assess both the degree of "active participation" by both attorneys and the relative benefit accruing to the subrogee from that participation.

This type of third-party negligence case falls largely upon the shoulders of the claimant's attorney, because the primary purpose or obligation of the subrogation attorney is merely to achieve for the subrogee a reimbursement of money already expended. When the third party defendant's liability is *uncontested,* the only real subject in the litigation is the amount of damages. From the viewpoint of the claimant's attorney, the quality of the subrogation attorney's participation under such circumstances is usually measured by

whether the subrogation attorney will agree to reduce the amount of the subrogated claim to facilitate settlement. The subrogation attorney may justifiably resist this approach. It follows that under the circumstances of uncontested liability, the subrogation attorney is relatively limited as to what he can do to participate actively in the case. His duties largely consist of filing a plea of intervention, offering proof of the amount expended by the insurance carrier (usually stipulated), and discussing with the claimant's attorney and the third party whether to reduce the amount of the subrogated claim for settlement purposes.

When the third party's liability is *contested*, however, and considerable work is required to establish the claimant's position (as apparently was the case in this suit), the role of the subrogation attorney, in addition to the normal pleading duties mentioned, should also involve actively working with the claimant's attorney to help establish the liability aspect of the case. Without the establishment of liability, there is no recovery or benefit to anyone. However, even in this situation, it is the claimant's attorney who bears the primary responsibility and therefore establishes the degree of participation by the subrogation attorney. Under the circumstances of contested liability, the subrogation attorney does not fulfill his duty of actively participating by simply filing the necessary papers for intervention and reviewing pleadings. The subrogation attorney must also be ready to cooperate with the claimant's attorney to the fullest degree possible. While it is true that the subrogation attorney can schedule depositions and perform other discovery to assist the claimant's liability case, these steps are generally regarded by the claimant's attorney as his primary terrain. However, the subrogation attorney can and should participate in each discovery procedure to the fullest extent possible.

■ To create a fair apportionment of fees in this type of situation, the trial judge must assess three relevant factors: (1) the degree of participation requested of the subrogation attorney by the claimant's attorney, (2) whether such requests were reasonable, and (3) the degree to which the subrogation attorney responded to these requests. If the subrogation attorney makes known his readiness to participate fully with the claimant's attorney and his offer of services is ignored or discouraged, then filing the necessary intervention papers, offering proof of the subrogee's damages, and participating to the limited extent possible is all that can be expected of him. The trial judge should take these circumstances into consideration and apportion the subrogation attorney's fees accordingly.

■ While we recognize this problem in the present case and observe that the division of attorneys' fees was rather extreme, we are not able to say based on the record before us that the trial judge clearly abused his discretion. UT's attorney actively participated in this case in an ancillary and supportive role. The trial judge apportioned the attorneys' fees between the two attorneys in recognition of this participation. The record in this case unfortunately does not allow us to resolve the apportionment any differently. We hope the legislature will amend this statute to provide more specific guidelines for the division of fees under art. 8307, § 6a.

Finally, we are compelled to discuss briefly the complaints advanced by the assistant attorney general regarding certain comments allegedly made by the trial judge during the hearing on this matter. During oral argument of this appeal, it was stated by the assistant attorney general (and not disputed by the claimant's attorney) that the trial judge chastized the Attorney General's office for challenging the integrity of the Galveston plaintiff's bar by bringing this claim. The assistant attorney general further stated that the trial judge issued a thinly veiled warning that if this case were appealed and remanded, there would be a mere $100 increase in the award of attorney's fees for UT's attorney. These alleged statements are not contained in the record before us. Had the record included

any such statements, we would have issued an appropriate ruling in response.

In consideration of the evidence before us, we affirm the judgment.