VANGUARD INSURANCE
COMPANY, Appellant,

v.

Howard M. HUMPHREY, Jr., Individually and as Executor of the Estate of Howard M. Humphrey, Sr., and Emma Marjorie Humphrey, Appellees.

No. C14–86–519–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 19, 1987.

Rehearing Denied April 16, 1987.

Neal H. Paster, Stephen W. Hanks, Houston, for appellant.

Otway Denny, Jr., Houston, for appellees.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a judgment in which appellant, intervenor in a negligence and product liability suit brought by appellees (plaintiffs below), was ordered to pay appellees $45,402.00 in attorney's fees. Appellant contends that the trial court

erred in its calculation of appellant's subrogated interest, in its award to appellant of settlement proceeds and in its award of attorney's fees. We find no error and affirm.

Howard M. Humphrey, Sr., died from injuries sustained while operating a tractor for his employer. The tractor was manufactured and sold by Massey-Ferguson, Inc., against whom appellees brought a negligence and product liability suit. Appellant provided workers' compensation insurance for Mr. Humphrey's employer and filed a Petition in Intervention to become subrogated to the rights of appellees for the benefits paid to Mrs. Humphrey under workers' compensation insurance.

Appellees settled with Massey-Ferguson before trial for $400,000.00 and trial to the court proceeded on appellant's subrogation claim. The trial court found that appellant had paid $39,564.00 in past compensation benefits to Mrs. Humphrey, that appellant was relieved of paying $96,642.00 in future benefits by virtue of the settlement between appellees and Massey-Ferguson, and that the total amount of appellant's subrogated interest was $136,206.00. The trial court then awarded appellees' attorney 33⅓% of the total subrogated interest, or $45,402.00, and ordered it to be paid by appellant. Finally, the trial court ordered appellees to reimburse appellant $39,564.00 from the settlement proceeds for the past benefits already paid to Mrs. Humphrey.

In its first two points of error, appellant contends the trial court erred in including future widow benefits in its calculation of appellant's subrogated interest and in awarding attorney's fees based on this total amount.

Subrogation recovery and attorney's fees in workers' compensation cases are governed by Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a (Vernon Supp.1987), which provides for the award and apportionment of attorney's fees allowable out of the carrier's subrogation recovery, taking into account the benefit accruing to the carrier as a result of each attorney's service. Appellant argues that the statute speaks only to past paid benefits and expenses since it is worded in the past tense. Further, as there is no statutory or case law authority for the carrier to seek recovery from a third party for the relief from benefits to be paid in the future, the total subrogated interest of the carrier should not include any calculation of relief from future benefits.

■ While appellant's statutory interpretation might be persuasive, a recent appellate decision dealt with this exact issue and held contrary to appellant's position. In *Ischy v. Twin City Fire Insurance Co.*, 718 S.W.2d 885 (Tex.App.—Austin 1986, writ ref'd n.r.e.), the court held that a workers' compensation carrier's release from future liability for death benefits constitutes a "subrogation recovery" thereby creating an obligation for payment of attorney's fees. *See also Chambers v. Texas Employers Insurance Assoc.*, 693 S.W.2d 648 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), in which the court held that, for the purpose of awarding attorney's fees, the "benefit accruing" to the carrier includes the amount paid *and* the relief from liability for future payments.

■ We therefore hold that the "benefit accruing" in Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a (Vernon Supp.1987), is the sum total of all past benefits paid and the relief from liability of any and all future benefits that would have been due and payable but for the recovery and settlement of claims against a third party tortfeasor. The first two points of error are overruled.

In its third point of error appellant asserts the trial court erred in its award of attorney's fees. It contends future benefits, upon which part of the fees was awarded, are not supported by the evidence, are speculative, and do not consider the remarriage contingency.

Mr. James Orr, a claims supervisor with an insurance managing agent, testified that, based on a certified copy of the Life Tables of the Vital Statistics of the United States, Mrs. Humphrey's life expectancy was 17.7 years. Further, based on this life expectancy, the insurance carrier would have owed her $96,642.00 in future death

benefits; therefore, appellees' attorney had saved the insurance company $96,642.00 by bringing this suit and obtaining a settlement. There was no objection to this testimony nor were the Life Tables offered into evidence.

■ Appellant contends that appellees failed in their burden of proving the value of future benefits as a matter of law because the remarriage contingency was not addressed and the Widow's Pension Table was not used to calculate the future benefits. A review of case authority shows that, while some states have provided for the use of remarriage tables to calculate the probability that a widow or widower will remarry, our legislature has provided no such specific guidelines. *See Twin City Fire Insurance Co. v. Cortez*, 576 S.W.2d 786, 790 (Tex.1978). *See also Walden v. Royal Globe Insurance Co.*, 577 S.W.2d 296, 301 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.), in which the court stated that "[T]he propensity or the likelihood of a widow remarrying is not, in our opinion, subject to such actuarial proof." While the Widow's Pension Table has been accepted as a means of calculating future death benefits, *see, e.g., Stott v. Texas Employers Insurance Assoc.*, 645 S.W.2d 778, 779 (Tex.1983), appellant does not cite, nor do we find, case or statutory authority mandating its use. Accordingly, appellant's third point of error is overruled.

■ In its fourth point of error appellant contends the trial court erred in ordering appellant to pay appellees' attorney's fees because, as a matter of law, the payment must come from the settlement proceeds. Appellant relies on the first part of article 8307, § 6a(a), which states that "[T]he amount of such recovery shall first pay costs and attorney's fees and then reimburse the association, and if there be any excess it shall be paid to the beneficiaries ..." Appellant ignores, however, further language in § 6a(a) stating: "[W]hen the claimant is represented by an attorney, and the association's interest is not actively represented by an attorney, the association shall pay such fee to the claimant's attorney not to exceed one-third (⅓) of said

subrogation recovery ... payable out of the association's part of the recovery." We hold the trial court properly ordered appellant to pay attorney's fees. Point of error four is overruled.

In the fifth and sixth points of error appellant argues the trial court erred in awarding appellees' counsel the full legal limit of 33⅓% of the subrogated interest without apportioning a share to appellant's counsel. Appellant contends there was no evidence, or insufficient evidence, to support the award, and that the award was an abuse of discretion. Appellant relies on *University of Texas System v. Melchor*, 696 S.W.2d 406 (Tex.App.—Houston [14th Dist.] 1985, no writ), to support its argument that its counsel was entitled to an apportionment of attorney's fees under article 8307, § 6a. This court in *Melchor* dealt with the apportionment of attorney's fees under article 8307, § 6a(b), in a situation requiring evaluation of whether the attorney representing the insurance carrier (or "association" as identified in the statute) "actively" represented its interest. Appellant focuses on language in *Melchor* which suggests that in order to apportion fairly the attorney's fees in this type of situation, the trial judge must assess three relevant factors: (1) the degree of participation requested of the subrogation attorney by the claimant's attorney, (2) whether such requests were reasonable, and (3) the degree to which the subrogation attorney responded to these requests. *Id.* at 409. Appellant claims that appellees' attorney never requested participation or help in the case, and argues that it is entitled to an apportionment of fees between the attorneys. However, *Melchor* does not mandate apportionment. This court interpreted other cases as requiring that a proper apportionment turns upon the facts of each individual situation and requires an assessment of the contributions of each attorney towards the recovery of the subrogation amount. *Id.* at 407–08.

Appellees' attorney testified that he started working on the case in 1978, that he hired two expert witnesses, made two trips to Kansas and one to Michigan to

obtain records and file suit in a related matter, that he took two depositions from people at Massey-Ferguson, and expended 300 hours and $8,000.00 in preparing the lawsuit. He further testified that he never received an investigative report from appellant's counsel, that appellant's counsel attended only a few of the depositions, sent only one set of interrogatories, and did not participate in any of the expense of investigating or preparing for trial. He testified the only contact he had in two years from appellant's counsel was one phone call asking if he was going to settle, and that the only papers on file from appellant's counsel were the Petition in Intervention, two letters and the set of interrogatories. The third party's attorney (defense counsel) testified that he and appellees' counsel worked out the settlement and that they did so in spite of appellant's counsel, who presented "great obstacles" in obtaining the settlement. Appellant's counsel offered no definitive evidence to dispute this testimony.

Allowance of attorney's fees rests in the sound discretion of the trial court, and its judgment will not be reversed without a clear showing of abuse of discretion. *Hartford Insurance Co. v. Branton & Mendelsohn, Inc.*, 670 S.W.2d 699, 703–04 (Tex.App.—San Antonio 1984, no writ). We cannot say the trial court abused its discretion in refusing to award a portion of attorney's fees to appellant's counsel. Points of error five and six are overruled.

In the seventh point of error appellant contends the trial court erred in awarding appellant only $39,564.00 after finding appellant's subrogated interest to be $136,206.00. Appellant does not concede that the total subrogated amount was properly determined as $136,206.00, but that if it is correct, then appellant should receive the entire amount from the settlement proceeds.

Article 8307, § 6a(c), states clearly that "[T]he net amount recovered by such beneficiary from the third party action shall be applied to reimburse the association for *past benefits and medical expenses paid* and any amount in excess of past benefits and medical expenses shall be treated as an

advance against future benefit payments of compensation to which the beneficiary is entitled to receive under the Act" (emphasis added). Appellant was not entitled to reimbursement in excess of $39,564.00, the amount it actually paid in past benefits. The seventh point of error is overruled.

The judgment of the trial court is affirmed.