TRAVIS CENTRAL APPRAISAL
DISTRICT, Petitioner,

v.

Diane Lee NORMAN, Respondent.

No. 09–0100.

Supreme Court of Texas.

Argued Dec. 16, 2009.

Decided April 29, 2011.

Jennifer A. Powell, Emily Diane New-house, Holly Boyd Wardell, Schwartz & Eichelbaum Wardell Mehl and Hansen, P.C., Austin, for Travis Central Appraisal District.

Russell Scott Cook, The Cook Law Firm, Austin, for Diane Lee Norman.

Adam Warren Aston, Assistant Solicitor General, for Amicus Curiae State of Texas.

Justice MEDINA delivered the opinion of the Court.

The Texas Anti–Retaliation Law, found in Chapter 451 of the Texas Labor Code, prohibits a person from discharging or discriminating against an employee, who in good faith files a workers' compensation claim. *See* TEX. LAB.CODE § 451.001(1). This law applies to private employers. We have also held it to apply to the state's political subdivisions through Chapter 504 of the Labor Code. *See City of LaPorte v. Barfield,* 898 S.W.2d 288, 298–99 (Tex. 1995) (holding that Chapter 504 waives the governmental immunity of political subdivisions for retaliatory discharge claims under Chapter 451).

In this interlocutory appeal, a political subdivision of the state argues that Chapter 504 has been amended since our deci-

sion in *Barfield* and no longer waives a political subdivision's immunity for retaliatory discharge claims under Chapter 451. We agree and conclude that our analysis of an earlier version of the Anti–Retaliation Law in *Barfield* is therefore not controlling. Because the court of appeals permitted the plaintiff's claim to proceed, as *Barfield* would have, we must under the current law reverse the court of appeals' judgment and dismiss the case.

## I

Diane Lee Norman went to work for the Travis Central Appraisal District ("TCAD") as a probationary employee in January of 2006. She was terminated about six months later, shortly after filing a workers' compensation claim. Norman claimed that she was terminated for seeking workers' compensation benefits and sued TCAD for retaliatory discharge under Chapter 451 of the Labor Code. *See* TEX. LAB.CODE § 451.001(1).

TCAD generally denied Norman's allegations and subsequently filed a plea to the jurisdiction, urging that Norman was required to exhaust her administrative remedies under TCAD's grievance procedures before filing suit. In support of its plea, TCAD attached part of its personnel policy handbook outlining its internal grievance procedures and an affidavit from Norman's supervisor, Mark Price, who also testified at the hearing on the plea.

Norman contended at this hearing that TCAD's grievance policy did not apply to her retaliatory discharge claim. She argued that Chapter 451 does not mention exhaustion of remedies as a jurisdictional prerequisite and that exhaustion is not required unless the Legislature has vested an administrative agency with exclusive jurisdiction over a controversy. She further cross-examined Price concerning his statements that the personnel manual did not apply to probationary employees in its entirety, calling into question whether the grievance process was available to her as a probationary employee.

The trial court denied TCAD's plea to the jurisdiction, and TCAD appealed.[1] *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) (permitting interlocutory appeal from order that "grants or denies a plea to the jurisdiction by a governmental unit"). In the court of appeals, TCAD repeated its exhaustion-of-administrative-remedies argument but also argued that governmental immunity had not been waived for Norman's retaliatory discharge claim, notwithstanding our decision in *City of LaPorte v. Barfield* to the contrary. Rejecting both arguments, the court of appeals affirmed the trial court's order denying TCAD's plea. 274 S.W.3d 902, 912 (Tex.App.-Austin 2008).

## II

Chapter 451 of the Labor Code, also known as the Anti–Retaliation Law, creates a cause of action against a "person" who "discharge[s] or in any other manner discriminate[s] against an employee because the employee has: (1) filed a workers' compensation claim in good faith; (2) hired a lawyer to represent the employee in a claim; (3) instituted or caused to be instituted in good faith a proceeding under [the Texas Workers' Compensation Act]; or (4) testified or is about to testify in a proceeding under [the Act]." TEX. LAB.CODE § 451.001. The statute does not define the word "person." One issue in *Barfield* was whether a political subdivision of the state

---

**1.** Although this is an interlocutory appeal over which our jurisdiction is limited, *see* TEX. GOV'T CODE § 22.225(b)(3), we have jurisdiction to determine whether the court of appeals correctly applied its jurisdiction. *Klein v. Hernandez*, 315 S.W.3d 1, 3 (Tex.2010).

might be a "person" within the statute's meaning, making it possible to bring this type of claim against the government. Because sovereign or governmental immunity generally protects the government from liability for the performance of governmental functions, such as the hiring and firing of its employees, the claim's viability depended on finding a waiver of the government's immunity for this particular claim. *Barfield*, 898 S.W.2d at 291. Although we could not find a clear and unambiguous waiver of immunity in the Anti–Retaliation Law itself, we did conclude ultimately that governmental immunity had been waived for such claims through subsequent amendments to the Political Subdivisions Law. *Id.* at 298–99.

Before reaching that conclusion, we examined the Anti–Retaliation Law and the circumstances surrounding its enactment in 1971. At that time, political subdivisions of the state were not required to provide workers compensation benefits, although that changed a couple of years later. But because governmental entities were not obligated to provide these benefits in 1971, we considered it unlikely that the Legislature would have intended to include them under this new law. *Id.* at 293–94. And the Legislature did not amend the Anti–Retaliation Law after the government became obligated to provide such benefits, so no clarification on the subject of waiver was ever added to the statute itself.

Finding no express waiver in the Anti–Retaliation Law, we next considered the Code Construction Act for its guidance on the issue. The Code Construction Act, adopted by the Legislature in 1985, provides that in codes adopted by the 60th or a subsequent Legislature, the word "per-

son" includes governmental entities. TEX. GOV'T CODE §§ 311.002, 311.005(2). We concluded that the definition could not be applied to the Anti–Retaliation Law even though the law had been recodified in the Labor Code. As we explained, limitations imposed under the recodification process prevented this use of the definition:

> This provision does not affect the construction of the Anti–Retaliation Law prior to 1993 because it was not part of a code to which the Code Construction Act applies, but in 1993 the Anti–Retaliation Law was recodified in the Labor Code, to which the Code Construction Act does apply. This recodification, however, was intended by the Legislature to be "without substantive change." TEX. LABOR CODE § 1.001(a) (footnote omitted). Construing the recodification of the Anti–Retaliation Law to waive governmental immunity would be not only a substantive but a very significant change. Given the Legislature's express intent not to make such changes, we conclude that the Anti–Retaliation Law as recodified does not waive governmental immunity.

*Barfield*, 898 S.W.2d at 294.

Finally, we considered the Political Subdivisions Law. *See* TEX. LAB.CODE ch. 504. Enacted two years after the Anti–Retaliation Law, this statute required political subdivisions of the state for the first time to provide compensation benefits to their employees.[2] The original enactment "adopted" various parts of the Workers' Compensation Act but did not include the Anti–Retaliation Law among them. In 1981, however, the Anti–Retaliation Law was added to the Political Subdivisions Law's list of "adopted" statutes.[3] The

**2.** Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 17, 1973 Tex. Gen. Laws 187, 198–200 (for-

merly codified as TEX.REV.CIV. STAT. art. 8309h).

**3.** Act of May 31, 1981, 67th Leg., R.S., ch.

Legislature amended the Political Subdivisions Law again in 1989, and recodified the 1989 version as Chapter 504 of the Labor Code in 1993.[4]

In *Barfield*, we focused on the 1981 and 1989 versions of the Political Subdivisions Law, the first versions to "adopt" the Anti–Retaliation Law, and we ultimately found in their text a clear waiver of immunity for retaliatory discharge claims brought under the Anti–Retaliation Law, which by the time of our decision had been codified in Chapter 451 of the Labor Code. The 1981 version, we said, authorized "at least a minimal remedy for wrongful discharge," and the 1989 version, we concluded, also expressed a clear and unambiguous waiver of immunity. *Barfield*, 898 S.W.2d at 296, 298. The 1989 version added an election-of-remedies provision, which prohibited a plaintiff from suing under both the Anti–Retaliation Law and the Whistleblower Act. Tex. Lab.Code § 504.003. We reasoned that this provision would have been unnecessary had the Legislature not intended to waive immunity for retaliatory discharge claims. *See Barfield*, 898 S.W.2d at 298 (noting that immunity had clearly been waived for Whistleblower claims and that "it would make little sense to require an employee to elect between an action barred by immunity and one not barred").

Although the Anti–Retaliation Law has never been amended, the Legislature has continuously tinkered with the Political Subdivisions Law. Since its recodification as Chapter 504 and our decision in *Barfield*, the law has been amended four times.[5] One of these amendments provides the basis for TCAD's argument that *Barfield* is no longer controlling authority. TCAD submits that the Political Subdivisions Law has not waived governmental immunity for retaliatory discharge claims since its amendment in 2005.

In 2005, the Legislature made a number of changes to the Workers Compensation Act designed to improve the delivery of medical care and the efficiency of the workers' compensation system. The Political Subdivisions Law was one of several Labor Code chapters affected by the changes. Among the many amendments was the addition of a new section in Chapter 504, regarding political subdivisions that elect to self-insure. *See* Tex. Lab. Code § 504.053. Included in this new section was a broadly-worded provision, stating that "[n]othing in this chapter waives sovereign immunity or creates a new cause of action." *Id.* § 504.053(e). Why this provision was included in that particular section is not apparent from its context, but as TCAD points out, the provision plainly purports to apply to the entire chapter, which, of course, includes the part that *Barfield* interpreted to waive the government's immunity for retaliatory discharge claims.

■ At oral argument, Norman's counsel suggested that the no-waiver provision did not affect *Barfield* because it spoke to sovereign immunity rather than governmental immunity. Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and

---

352, § 3, 1981 Tex. Gen. Laws 937, 937–938.

4. *See* Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, § 15.47, 1989 Tex. Gen. Laws 1, 113 (formerly codified as Tex.Rev.Civ. Stat. art. 8309h, § 3); Act of May 12, 1993, 73rd Leg., R.S., ch. 269, 1993 Tex. Gen. Laws 987, 1250.

5. *See* Act of June 18,1999, 76th Leg., R.S., ch. 954, § 6, 1999 Tex. Gen. Laws 3694, 3695; Act of June 20, 2003, 78th Leg., R.S., ch. 939, § 2, 2003 Tex. Gen. Laws 2803; Act of June 1, 2005, 79th Leg., R.S., ch. 265, § 3.318, 2005 Tex. Gen. Laws 469, 570; Act of June 13, 2007, 80th Leg., R.S., ch. 266 § 5, 2007 Tex. Gen. Laws 485, 497.

liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). Sovereign and governmental immunity are therefore related common law concepts that differ only in scope. Their similarity sometimes causes the two terms to be used interchangeably. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE § 101.025; TEX. GOV'T CODE § 2007.004; *see also* 19 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 293.01[1] (2011). Because Chapter 504 applies specifically to political subdivisions of the state rather than the state itself, we have no doubt that the immunity referenced in the 2005 no-waiver provision refers to the immunity applicable to such subdivisions. We conclude then that the no-waiver provision does implicate our decision in *Barfield.*

### III

■ Sovereign immunity and governmental immunity are common law doctrines, but we have traditionally deferred their waiver to the Legislature, assuming it to be "better suited to balance the conflicting policy issues associated with waving immunity." *Wichita Falls State Hosp.,* 106 S.W.3d at 695. When dealing with these immunities, we have further required the Legislature to express its intent clearly and unambiguously. *Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994); *see also* TEX. GOV'T CODE § 311.034 (codifying the clear and unambiguous standard). We have not always insisted on perfect clarity, however, when the statute left no doubt about the Legislature's intentions. Legislative intent, we have said, "remains the polestar of statutory construction," *Barfield,* 898 S.W.2d at 292, and so we never apply the clear and unambiguous standard mechanically to defeat the law's purpose or

the Legislature's intent. *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 3 (Tex. 2000). Therefore when a waiver of immunity has been necessary to make sense of a statute, we have held it to be clear and unambiguous. *Barfield,* 898 S.W.2d at 291–92.

In 1973, when the Political Subdivisions Law was first enacted, it did not waive immunity for retaliatory discharge claims. *Id.* at 294–95. This changed in 1981, when the Legislature amended the law, adopting the Anti–Retaliation Law and authorizing a minimal remedy for wrongful discharge. *Id.* at 295. The statute did "not expressly authorize, as it might, actions against governmental entities for violations of the Anti–Retaliation Law," but it was clear enough. *Id.* In 1989, that remedy was expanded further. *See id.* at 298 (concluding "that the Legislature intended by the 1989 statute to waive immunity completely"). But what was clear and unambiguous in 1995, when we decided *Barfield,* is less so today.

The 2005 amendment to the Political Subdivisions Law says that Chapter 504 does not waive immunity. TEX. LAB.CODE § 504.053(e). This no-waiver provision considerably clouds the chapter's former clarity regarding retaliatory discharge claims. Although the Political Subdivisions Law incorporates a number of chapters pertaining to workers' compensation, including the Anti–Retaliation Law, it does so only to the extent of consistency with Chapter 504. TEX. LAB.CODE § 504.002(a). We concluded in *Barfield* that this incorporation was, without more, an insufficient expression of the government's intent to waive immunity. *Barfield,* 898 S.W.2d at 295–96 (citing *Duhart v. State,* 610 S.W.2d 740 (Tex.1980)). And although the election-of-remedies provision added in 1989 clarified the Legislature's intent regarding immunity in the 1989 version, the no-waiv-

er provision has since muddled the issue. *See* TEX. LAB.CODE § 504.053(e).

The waiver of governmental immunity must be clear and unambiguous, TEX. GOV'T CODE § 311.034, and the current version of the Political Subdivisions Law is too internally inconsistent to satisfy that standard. We conclude then that the Political Subdivisions Law no longer waives immunity for retaliatory discharge claims under Chapter 451. Because a retaliatory discharge claim may not be brought against the government without its consent and the Political Subdivisions Law no longer provides such consent by waiving the government's immunity, the underlying claim in this case must be dismissed.

\*     \*     \*

The court of appeals' judgment is accordingly reversed, and the case is dismissed.