Paula RUSSELL, Appellant,

v.

METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, Texas, Appellee.

No. 14–10–00726–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 10, 2011.

Sylvester Anderson, Houston, for appellant.

Melissa (Lisa) Ledoux Bruce, Spring, Dean G. Pappas, Mary Markantonis, Houston, for appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

JEFFREY V. BROWN, Justice.

Appellant Paula Russell appeals from the trial court's order granting the plea to the jurisdiction filed by appellee Metropolitan Transit Authority of Harris County, Texas. We affirm.

I

Paula Russell, an employee of Metropolitan Transit Authority of Harris County, Texas ("Metro"), was involved in an on-the-job car accident with Andre Sais on May 21, 2008, while driving a Metro-owned truck. Russell incurred medical expenses and lost wages as a result of the accident and filed for workers'-compensation benefits from Metro, a self-insured political subdivision under Texas Labor Code § 504.011. Metro accepted the claim as compensable and paid Russell benefits totaling $27,084.97. Under section 417.001(b) of the Labor Code, Metro was granted a subrogation interest in Russell's right to enforce liability against third parties. Metro's subrogation lien was limited to the total benefits Metro paid to Russell less the percentage of a fact finder's determination of Metro's proportionate responsibility, if any. See Tex. Lab.Code § 417.001(b).

In October 2008, Metro sent notice of its subrogated claim to American Century Claims Services, Inc., the claims adjustor for Sais's auto-insurance carrier. In March 2009, Metro's workers'-compensation adjustor sent a letter to American Century offering to settle Metro's subrogation lien for $25,000—an amount equal to Sais's policy limit. American Century agreed to the settlement in exchange for a release of further claims against Sais's insurer. On April 6, 2009, Russell's then-attorney sent a letter to Metro and American Century warning that the release would not discharge Russell's claims against Sais. On April 21, 2009, Russell's attorney in this case requested the settlement be stopped in light of Metro's potential proportionate responsibility for the accident and to determine his right to attorney's fees derived from the $25,000

settlement.[1] Metro and American Century, however, proceeded with the settlement and signed the release on May 21, 2009.

In October 2009, Russell filed suit against Sais, Metro, and American Century. Russell sued Sais for personal injuries, and American Century for conversion and intentional interference with a contract. She sought declaratory relief against Metro establishing that: (1) the release signed by Metro does not prohibit Russell from suing Sais for personal injuries "separate from the workers'[-]compensation benefits"; (2) Metro exceeded its legal authority by satisfying its subrogation interest without a third-party recovery by Russell; and (3) neither Metro nor any of its representatives were entitled to collect attorney's fees based on the settlement.

Metro moved to dismiss for lack of jurisdiction, arguing primarily that governmental immunity bars Russell's claims. The trial court granted Metro's plea to the jurisdiction without specifying the grounds for its ruling and denied Russell's request to amend her pleadings. Russell brings this interlocutory appeal.

On appeal, Metro argues Russell failed to demonstrate any provision under which the legislature waived governmental immunity as to her tort claims against Metro. Furthermore, Metro argues dismissal was proper because Russell failed to give pre-suit notice as the Texas Tort Claims Act requires. Although Russell couches her claims as requests for declaratory relief, Metro argues they can be "easily recognized as a transparent attempt to seek Metro's partial recovery of its lien and to recover attorney's fees." Therefore, Metro maintains, dismissal was also proper because "private parties cannot circumvent sovereign immunity from suit by characterizing a suit for money damages as a declaratory[-]judgment claim." Finally, Metro argues that to the extent immunity is not implicated in Russell's claims, her requests for declaratory relief are not justiciable and therefore not proper under the Uniform Declaratory Judgments Act.

Russell argues in response that her suit does not allege tort claims, money damages, or seek an award of attorney's fees against Metro, and therefore she was not required to plead a clear and express waiver of governmental immunity, nor was she required to give Metro pre-suit notice under the Tort Claims Act. Russell maintains her claims do not sound in tort but are limited to declaratory relief seeking an interpretation of applicable Labor Code statutes and a determination of the parties' rights, and therefore governmental immunity is not implicated. Alternatively, Russell argues governmental immunity has been waived in cases seeking an interpretation of the sections of the Labor Code pertaining to her claim.

## II

Sovereign immunity defeats a trial court's subject-matter jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004); *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003). In Texas, a governmental unit is immune from tort liability unless the legislature has waived immunity or the governmental unit consents to the suit. *Miranda,* 133 S.W.3d at

1. Sais was allegedly traveling the wrong way down the Interstate 45 High–Occupancy Vehicle ("HOV") lane when the accident occurred. Russell alleges that Metro potentially bears proportionate responsibility for the ac-

cident because (1) Metro controls access to the HOV lane, and (2) Metro failed to repair or maintain the gate at the entrance to the HOV lane where Sais gained access.

224 (discussing consent to suit); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341–42 (Tex.1998) (discussing legislative waiver of immunity). Therefore, whether a governmental unit is immune from liability for a particular claim depends entirely upon statute. *Bossley*, 968 S.W.2d at 341. The Tort Claims Act, for instance, provides a limited waiver of sovereign immunity, which allows suits to be brought against governmental units only in narrowly defined circumstances. *See* Tex. Civ. Prac. & Rem.Code §§ 101.001–.109; *Tex. Dep't. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001).

 The existence of subject-matter jurisdiction is a question of law, and we review de novo a trial court's ruling on a plea to the jurisdiction. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex.2007); *Miranda*, 133 S.W.3d at 226. The plaintiff bears the burden of affirmatively proving the trial court has subject-matter jurisdiction over a case. *Brazoria County v. Van Gelder*, 304 S.W.3d 447, 451 (Tex.App.-Houston [14th Dist.] 2009, pet. filed). A defendant may file a plea to the jurisdiction, which is a dilatory plea that challenges the court's authority to determine the subject matter of the action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000).

 Much like the summary-judgment standard, when reviewing a trial court's ruling on a plea to the jurisdiction we indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *See id.* In doing so, we consider the facts alleged in the petition and, to the extent relevant to the jurisdictional issue, any evidence submitted by the parties to the trial court. *See id.* at 555. If a plaintiff pleads facts that affirmatively demonstrate an absence of jurisdiction and the jurisdictional defect is incurable, then the cause is properly dismissed. *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex.1989). However, when the plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

## III

### A

Metro employees are provided workers'-compensation coverage under chapter 504 of the Texas Labor Code. Chapter 417 of the Labor Code, which governs third-party liability in workers'-compensation cases, is expressly included in the coverage provided to Metro employees by chapter 504. *See* Tex. Lab.Code § 504.002(a)(9). Chapter 417 permits a covered employee to pursue a third-party lawsuit against the responsible third party. Tex. Lab.Code § 417.001(a). In such cases, the insurance carrier (Metro)[2] is subrogated to the rights of the employee for any benefits paid up to the amount of the total benefits paid by the carrier less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact under section 33.003 of the Civil Practices and Remedies Code that is attributable to the employer. *See* Tex. Lab.Code § 417.001(b). Chapter 417 permits the carrier to "enforce the liability of the third party in the name of the injured employee." *Id.*

**2.** The term "insurance carrier" is defined to include "a governmental entity that self-insures, either individually or collectively," such as Metro. *See* Tex. Lab.Code § 401.011(27)(D).

In this case, Metro pursued and satisfied its subrogation interest against a third-party, Sais, before Russell sued Sais. Therefore, there was no opportunity for Metro's subrogation interest to be proportionately reduced by a fact finder's determination of Metro's potential responsibility for the accident under section 417.001(b) of the Labor Code. Furthermore, because Russell had not attained a third-party recovery from Sais in which Metro's interests were not actively represented, there was no basis for an award of attorney's fees under section 417.003 of the Labor Code. Additionally, Russell argues that the release of claims signed by Metro as part of its settlement with American Century arguably released Russell's third-party claims against Sais.

For ease of discussion, we organize Russell's ten requested grounds for declaratory relief into three categories: (1) grounds seeking a declaration that Metro acted outside its statutory authority by satisfying its statutory lien before Russell could attain a third-party recovery; (2) grounds seeking a declaration that the release signed by Metro is not binding against Russell; and (3) grounds seeking a declaration that Metro is not entitled to attorney's fees.

## B

▮ In grounds A, B, F, and H, Russell seeks declarations that Metro acted outside its statutory authority under chapter 417 of the Labor Code. In ground A, Russell states that "[Metro] is not entitled to recover or retain any of its subrogation interest because there was no third-party recovery by a claimant, [Russell], as stipulated in Texas Labor Code § 417.002(a)." In ground B, Russell alleges that "[Metro] did not have legal authority to disregard [Russell's] right to have the percentage of [Metro's] responsibility determined and its

subrogation interested reduced accordingly, pursuant to § 417.001(b). Under ground F, Russell states that "[Metro] is not entitled to recover any of its subrogation lien because no lawsuit was filed against the third party that caused [Russell's] injuries and damages, as required by § 417.001(b) of the Texas Labor Code." And in ground H, Russell asserts that "Texas Labor Code § 417.001(b) does not authorize an insurance carrier to recover medical benefits paid on or behalf of an employee as part of its subrogation interest."

▮ The purpose of Russell's arguments in grounds A, B, F, and H is to obtain a particular interpretation of the applicable provisions of the Labor Code and a finding that Metro acted outside its statutory authority. The Uniform Declaratory Judgments Act (DJA) expressly provides that persons may challenge or seek a construction of ordinances or statutes. *See* Tex. Civ. Prac. & Rem.Code § 37.004; *Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994). Similarly, declaratory-judgment actions by private parties seeking to determine their rights under a statute are not suits against the State because they do not attempt to impose liability upon the State. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Such declaratory-judgment actions do not implicate the doctrine of sovereign immunity. *Id.* Because sovereign immunity is not implicated, legislative consent to sue is not required. *County of Galveston v. Tolle,* 176 S.W.3d 859, 862 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

▮ Nevertheless, it is well-settled that private parties cannot circumvent immunity by characterizing a suit for money damages as a declaratory-judgment claim. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 371 (Tex.2009) (quoting *IT–Davy,* 74

S.W.3d at 856). The supreme court has held that such a circumvention occurs when the only conceivable remedy for a favorable declaratory judgment against a governmental entity is money damages. *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex.2007) (per curiam). In *Williams*, a group of retired firefighters sued the City of Houston over amounts deducted from payments they received upon termination. *Id.* at 828. The firefighters sought declaratory relief that required an interpretation of state law to determine to what payment the firefighters were entitled. *See id.* Citing *IT–Davy*, the supreme court held that because the only injury the firefighters alleged had already occurred, they were left with "only one plausible remedy—an award of money damages." *Id.* at 829. And because the firefighters did not assert any right to future payments, they lacked standing to seek a statutory interpretation on behalf of currently employed firefighters. *Id.* The *Williams* court also reiterated that "if the sole purpose of [a declaratory judgment] is to obtain a money judgment, immunity is not waived." *Id.; see also Tex. Logos, L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 121–22 (Tex.App.-Austin 2007, no pet.) (citing *Williams* in holding that "[a]n otherwise-proper declaratory claim alleging statutory violations may nonetheless have the effect of establishing a right to a remedy that is barred by sovereign immunity").

The holding in *Williams* governs grounds A, B, F, and H. The firefighters in *Williams* sought a statutory interpretation that would show they had been denied full payments. Likewise, Russell seeks a statutory interpretation establishing Metro wrongfully satisfied its subrogation lien before Russell could attain a third-party recovery. And, just as the firefighters in *Williams* claimed the city retained money to which it was not entitled, the gist of Russell's contentions is that Metro has attained $25,000 to which it is not fully entitled. Furthermore, just as the retired firefighters in *Williams* had no standing to seek a statutory interpretation for prospective relief because their alleged injury had already occurred and was not capable of repetition, Russell does not and cannot argue she will suffer from Metro repeating its course of action, as Metro's subrogation lien can be satisfied only once. Finally, just as in *Williams* there was no plausible remedy the declaratory judgment could recommend other than money damages against an immunized governmental entity, here there is no relief a declaratory judgment can offer Russell that does not simply lay the predicate for a damages claim against Metro.[3] *See Williams*, 216 S.W.3d

**3.** Russell points us to several cases in which declaratory-judgment actions related to determining parties' rights under a statute or ordinance were held not to implicate governmental immunity. *See, e.g., Leeper*, 893 S.W.2d at 446 (holding a declaratory-judgment action was proper to construe compulsory school attendance law and did not implicate governmental immunity); *Tex. Highway Comm'n v. Tex. Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 530–31 (Tex. 1963) (holding governmental immunity was not implicated in a declaratory-judgment action seeking an interpretation of a competitive bidding statute as applied to the highway commission's policy of requiring all materials furnished under contracts be man-

ufactured in the United States); *Cobb v. Harrington*, 144 Tex. 360, 366, 190 S.W.2d 709, 712 (1945) (holding governmental immunity not implicated and a declaratory-judgment action proper to seek determination of whether plaintiffs were "motor carriers" for purposes of tax statute). But in all the cases Russell relies upon for this point, the trial court provided *prospective* relief by interpreting the statutes in question. Each court was able to do so because each controversy represented an ongoing dispute rather than a single, past injury that could be remedied only by an award of money damages. *Cf. Williams*, 216 S.W.3d at 828–29.

at 828–29; *see also Castro v. McNabb,* 319 S.W.3d 721, 733 (Tex.App.-El Paso 2009, no pet.) (holding plaintiff may not re-shape pleadings to support jurisdiction in an effort to use a petition for declaratory relief to establish a critical element in threatened tort causes of action).

Russell goes to great effort in her briefing to insist she does not seek money damages, or even attorney's fees based on section 417.003 of the Labor Code, as part of her requested declaratory relief. Rather, she insists she seeks only a "determination of the parties' respective rights." But the rule established by *Williams* dictates that our governmental-immunity analysis does not end just because a request for declaratory relief does not on its face include a request for money damages. We must further ask what would be the "conceivable remedy" of a judgment favorable to Russell. *Williams,* 216 S.W.3d at 828. Because the only conceivable remedy as to grounds A, B, F, and H would be money damages, governmental immunity bars declaratory relief on these grounds. The trial court properly granted Metro's plea to the jurisdiction on grounds A, B, F, and H.

### C

■ In grounds C and D, Russell respectively seeks a declaration that Metro "did not have the right to release all of [Russell's] rights against Sais, and could only release an amount equal to the amount of the settlement, $25,000" and that the release "does not prohibit [Russell] from suing [Sais] for pain and suffering, mental anguish, physical impairment, disfigurement, and any other damages separate from the workers'[-]compensation benefits paid by [Metro]."

■ A declaratory judgment is appropriate only if a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995); *WesternGeco, L.L.C. v. Input/Output, Inc.,* 246 S.W.3d 776, 781 (Tex. App.-Houston [14th Dist.] 2008, no pet.). For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Bonham State Bank,* 907 S.W.2d at 467; *WesternGeco, L.L.C.,* 246 S.W.3d at 781. A justiciable controversy must be distinguished from an advisory opinion, which is prohibited under both the Texas and federal constitutions. *Texas Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993).

Grounds C and D present no justiciable controversy. Neither Sais nor Metro has argued the release is binding as to any claim brought by Russell against Sais. For its part, Metro has affirmatively stated in its pleadings, both to the trial court and to this court, that the document does not release Russell's claims against Sais. Because no party other than Russell suggests the document can be interpreted to release Russell's claims against Sais, no actual controversy exists between the parties; the requested declaratory relief would amount to an advisory opinion. *See Tex. Air Control Bd.,* 852 S.W.2d at 444. Because the trial court lacked jurisdiction under the Uniform Declaratory Judgment Act to consider Russell's grounds C and D for declaratory relief, the trial court properly granted Metro's plea to the jurisdiction on these two grounds.

### D

■ In grounds E, G, I, and J, Russell seeks declarations related to an award of attorney's fees under section 417.003, which provides for attorney's fees for representation of an insurance carrier's inter-

est. Russell argues in ground E that "[Metro's] attorney, Dean Pappas, did not actively represent Metro in obtaining the third-party recovery, therefore, awarding a portion of the attorney fee to Metro's attorney is not authorized pursuant to § 417.003(c) of the Texas Labor Code." Under ground G, Russell maintains that "[Metro's] non-attorney may not recover attorney fees for herself or her employer, under Texas Labor Code § 417.003(c), for recovering the subrogation interest of an insurance carrier from a third party or third party insurer." In ground I, Russell insists that "Texas Labor Code § 417.003(c) does not authorize [Metro] to recover attorney fees. And under ground J, Russell argues that "[Metro] is not entitled to recover attorney fees under Labor Code § 417.003(c) since there was no recovery by [Russell] in a third-party action pursuant to § 417.003(c)."

None of these grounds concern justiciable claims. There is no evidence in the record, and no party contends, that attorney's fees were awarded to Metro's attorney, Dean Pappas, or Metro's non-attorney representative, Carolee Doughman. There is furthermore no evidence that Metro now seeks an award of attorney's fees based on the $25,000 settlement, or that any portion of the settlement represents an award of attorney's fees. There is no basis under section 417.003 for

awarding attorney's fees absent a third-party action in which Metro was not represented. Accordingly, there exists no actual controversy between Russell and Metro as to attorney's fees. *See Bonham State Bank,* 907 S.W.2d at 467; *WesternGeco, L.L.C.,* 246 S.W.3d at 781. Because the trial court lacked jurisdiction under the Uniform Declaratory Judgment Act to consider Russell's grounds E, G, I, and J for declaratory relief, the plea to the jurisdiction was properly granted as to those grounds.

## IV

Russell argues in the alternative that immunity has been waived for claims concerning sections 417.001–.003 of the Texas Labor Code. Russell argues there are "numerous apportionment and subrogation cases involving governmental entities" interpreting the relevant sections of the Labor Code, and "[n]one have been dismissed for lack of jurisdiction." [4]

The parties agree the Tort Claims Act does not waive immunity for any of Russell's claims.[5] Russell instead pleaded in her petition that immunity had been waived under chapters 401, 417, and 504 of the Labor Code. Russell does not argue any of these sections contain an express waiver of immunity. Instead, she suggests we find that the statutory scheme estab-

---

4. In each of the reported cases Russell cites, however, the *governmental entity* challenged an award of attorney's fees out of its subrogated interest. *See Univ. of Tex. at Arlington v. Bishop,* 997 S.W.2d 350 (Tex.App.-Fort Worth 1999, pet. denied); *State of Texas v. Lloyd,* 994 S.W.2d 362 (Tex.App.-Waco 1999, no pet.); *Tex. Dep't of Transp. v. Wilson,* 980 S.W.2d 939 (Tex.App.-Fort Worth 1998, pet. denied); *City of Austin v. Janowski,* 825 S.W.2d 786 (Tex.App.-Austin 1992, no writ); *Univ. of Tex. Sys. v. Melchor,* 696 S.W.2d 406 (Tex.App.-Houston [14th Dist.] 1985, no writ); *Metro. Transit. Auth. v. Plessner,* 682 S.W.2d 650 (Tex.App.-Houston [1st Dist.] 1984, no

writ). A governmental entity's ability to appeal a reduction of attorney's fees from its subrogated interest for attorney's fees does not support Russell's argument, which is that immunity has been has been generally waived in claims "regarding the application of" sections 417.001–.003 of the Labor Code.

5. Because the parties agree that the Tort Claims Act does not grant jurisdiction over Russell's claims, we do not reach Metro's argument that pre-suit notice was required but not filed in this case. *See* Tex. Civ. Prac. & Rem.Code § 101.101.

lished under these chapters impliedly waives immunity for her claims. She relies on the supreme court's decision in *City of La Porte v. Barfield,* in which the court held that "[t]he rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded." 898 S.W.2d 288, 292 (Tex.1995). In *Barfield,* the supreme court concluded immunity for political subdivisions had been waived for retaliatory-discharge claims under chapter 451 of the Labor Code, although no express waiver was included in the statutory language. The supreme court reasoned that the addition of an election-of-remedies provision in chapter 504 of the Labor Code, which prohibited a plaintiff from suing under both the Anti–Retaliation Law and the Whistleblower Act, would have been unnecessary had the legislature not intended to waive immunity for retaliatory-discharge claims. *See id.* at 298.[6] Russell cites *University of Texas Health Science Center at San Antonio v. Mata & Bordini, Inc.,* 2 S.W.3d 312 (Tex.App.-San Antonio 1999, pet. denied), for the proposition that immunity has been waived as to grounds A, B, E, F, G, H, I, and J of her request for declaratory judgment. In *Mata,* the San Antonio Court of Appeals relied on the supreme court's rationale in *Barfield* in holding the state was not immune from actions seeking an apportionment of attorney's fees under section 417.003 of the Labor Code. *Id.* at 316–17.

We note initially that if we were to follow *Mata* and hold immunity has been waived for apportionment actions under section 417.003, immunity potentially would be waived only as to Russell's grounds E, G, I, and J, which specifically address the apportionment of attorney's fees. This is because the waiver recognized in *Mata* is much more limited than the scope of the declarations Russell seeks in this case. We need not decide, however, whether immunity is waived as to any of these grounds because Russell has not sought an award of attorney's fees, and therefore has not sought the relief for which the *Mata* court found immunity had been waived. Unlike *Mata,* in which a party specifically sought an award of attorney's fees, Russell seeks only a declaration that *Metro and its representatives* are *not* entitled to attorney's fees. *Cf. Mata,* 2 S.W.3d at 315. As previously noted, however, there is no evidence Metro has been awarded or seeks attorney's fees. Therefore, the trial court properly dismissed those grounds for declaratory judgment because it was not presented with an actual controversy between the parties, and any judgment would amount to an impermissible advisory opinion. *See Bonham State Bank,* 907 S.W.2d at 467; *WesternGeco, L.L.C.,* 246 S.W.3d at 781. Absent a request by Russell for attorney's fees under section 417.003, *Mata* does not apply. We therefore do not address under what circumstances, if any, immunity is waived for apportionment actions under section 417.003. We simply conclude that, by not seeking an award of attorney's fees, Russell has not sought the relief that would potentially be available if this court followed *Mata* and found a statutory waiver of immunity for apportionment actions under section 417.003.

---

**6.** While this case was pending before our court, the supreme court revisited the issue of immunity against retaliatory-discharge claims in *Travis Cent. Appraisal Dist. v. Norman,* 342 S.W.3d 54 (Tex.2011). The court concluded that the Legislature's 2005 addition of a no-waiver provision to chapter 504 had rendered the statute "too internally inconsistent" to serve as a clear and unambiguous waiver of governmental immunity and found that *Barfield* no longer controls. *Travis Cent. Appraisal Dist.,* 342 S.W.3d at 58–59.

Although we do not reach an analysis of whether immunity has been waived for apportionment actions under section 417.003 of the Labor Code, we note that the supreme court's recent decision in *Travis Central Appraisal District v. Norman*, 342 S.W.3d 54 (Tex.2011) that immunity is no longer available for retaliatory-discharge claims would seem to apply equally to an inquiry of whether immunity is waived for apportionment actions under section 417.003 of the Labor Code. In *Mata*, the court found a waiver for apportionment actions because chapter 503 of the Labor Code, which sets out a workers'-compensation scheme for University of Texas employees, expressly included chapter 417. *Mata*, 2 S.W.3d at 317; *see also* Tex. Lab.Code § 503.002(a)(9). In this case, Russell argues that chapter 504, which sets out a workers'-compensation scheme for employees of political subdivisions, also expressly includes chapter 417 of the Labor Code and, therefore, the rationale behind *Mata* would apply here. *See* Tex. Lab.Code § 504.002(a)(9). But chapter 504 now includes § 504.053(e): "Nothing in this chapter waives sovereign immunity...." This provision, added by the legislature in 2005, led the supreme court to conclude in *Travis Central Appraisal District* that chapter 504 no longer supports waiver under the *Barfield* standard. *Travis Cent. Appraisal Dist.*, 342 S.W.3d at 58–59; Tex. Lab.Code § 504.053(e). Accordingly, even if we concluded Russell sought relief that would warrant a waiver analysis, it appears the supreme court has foreclosed the potential for further waivers of immunity under the current formulation of chapter 504 of the Labor Code.

## V

Lastly, Russell argues that the trial court erred in dismissing her claim without allowing an opportunity to amend her pleadings. A plaintiff deserves "a reasonable opportunity to amend" unless the pleadings affirmatively negate the existence of jurisdiction. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007); *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex.2004); *TRST Corpus, Inc. v. Fin. Ctr. Inc.*, 9 S.W.3d 316, 320 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

Nevertheless, based on the reasoning above, we conclude that Russell's pleadings have affirmatively negated any possible theory upon which jurisdiction could be based. Russell's grounds that are barred by governmental immunity cannot be re-pleaded to avoid immunity because there is no prospective relief available to Russell other than a judgment that would lay the predicate for a damages claim. *See Williams*, 216 S.W.3d at 828–29. Nor can Russell change the facts that render her remaining grounds not justiciable. As long as there is no dispute that the release between Metro and American Century is not binding on Russell, and Metro and its representatives have not been awarded and do not seek attorney fees based on section 417.003 of the Labor Code, there is no way in which Russell could re-plead her claims to confer jurisdiction on the trial court. *See Bonham State Bank*, 907 S.W.2d at 467; *WesternGeco, L.L.C.*, 246 S.W.3d at 781. The trial court therefore did not err in refusing Russell an opportunity to further amend her pleadings.

\* \* \*

For the foregoing reasons, we affirm the trial court's judgment.