

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00262-CV

THE CITY OF COLLEGE STATION,

                                                  Appellant

 v.

PATRICIA KAHLDEN, INDIVIDUALLY AND
AS REPRESENTATIVE OF THE ESTATE OF
LILLIE MAY WILLIAMS BAYLESS,

                                                  Appellee

**From the 272nd District Court
Brazos County, Texas
Trial Court No. 11-003172-CV-272**

## MEMORANDUM OPINION

Lillie Bayless was killed in a traffic accident in College Station, Texas. She stopped behind a College Station police officer, James Elkins. Elkins had stopped his patrol car in the roadway to remove debris. While Bayless was stopped behind Elkins, she was struck from the rear by Laura Sue Striegler. Patricia Kahlden, Bayless' daughter, sued Officer Elkins, the City of College Station, and Striegler. The City filed a motion for summary judgment alleging sovereign immunity which was denied by the

trial court. The City then brought this interlocutory appeal. Because the trial court erred in denying the City's motion for summary judgment, we reverse the trial court's order denying the City's motion for summary judgment and remand the case to the trial court for further proceedings.

## TEXAS TORT CLAIMS ACT

In this proceeding, the City is immune from suit unless the Tort Claims Act expressly waives immunity. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001-.109 (West 2011 & Supp. 2013). Sovereign immunity protects the State and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)); *Coryell County v. Harrell*, 379 S.W.3d 345, 347 (Tex. App.—Waco 2011, no pet.). Sovereign or governmental immunity includes two distinct principles, immunity from suit and immunity from liability. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Although immunity from liability is an affirmative defense, immunity from suit is not because it deprives a court of subject matter jurisdiction. *Id*. Thus, the party suing the governmental entity must establish the State's consent, which may be alleged either by reference to a statute or to express legislative permission. *Texas DOT v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

## THE LAWSUIT

Kahlden initially sued Elkins and Striegler, for negligence, wrongful death, and survival damages. She sued the City, as Elkins's employer, under the theory of respondeat superior, also known as vicarious liability. In the petition, Kahlden alleged that the City's immunity was waived pursuant to the Texas Tort Claims Act, section 101.021 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 101.021 (West 2011).

The City answered and alleged, among other allegations, the applicability of section 101.055, an emergency action exception to the general waiver of the Tort Claims Act. *Id*. § 101.055. Kahlden amended her petition and again alleged that the City's immunity was waived pursuant to section 101.021. She also alleged that the "emergency action" exception found in section 101.055 did not apply to the 101.021 waiver because Elkins' actions were allegedly not in compliance with laws and ordinances applicable to emergency action.

## SUMMARY JUDGMENT

The City then moved for summary judgment alleging the exceptions of sections 101.055 and 101.062 to the Tort Claims Act were applicable to the underlying incident. Kahlden amended her petition a second time in which she expanded on a section in the first amended petition entitled "Texas Tort Claims Act." In that section, Kahlden again alleged that because Elkins was negligent in the operation of a motor vehicle, sovereign

immunity was waived pursuant to section 101.021. She further specifically alleged that the exception pursuant to section 101.055 did not apply because: 1) Elkins was not responding to an emergency call nor reacting to an emergency situation at the time of the collision; 2) Elkins acted with conscious indifference or reckless disregard for the safety of others at the time of the collision; and 3) Elkins' actions were not in compliance with all applicable laws and ordinances because Elkins exhibited a reckless disregard for the safety of others in violation of section 546.005 of the Texas Transportation Code. Kahlden further alleged that the exception under section 101.062 was inapplicable because at the time of the collision, Elkins was not providing 9-1-1 service or responding to a 9-1-1 emergency call.

Thus, we have the following allegations of the applicable common law doctrine, statutory waiver, exceptions, and limitations:

1. General common law rule of sovereign immunity (*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003));

2. The general tort claims act (TCA) waiver, 101.021[1];

---

[1] A governmental unit in the state is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law; and

3. An exception to the TCA 101.021 waiver, 101.055[2];

4. A limitation to the application of the exception of 101.055 in the Transportation Code section 546.005[3];

5. Another exception to the TCA 101.021 waiver, 101.062[4];

6. A limitation within the 101.062 exception that excludes its application under certain circumstances.

In one issue on appeal, the City argues that the trial court erred in denying its motion for summary judgment on the issue of subject matter jurisdiction because the

---

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011).

[2] This chapter does not apply to a claim arising:

\* \* \*

(2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (West 2011).

[3] This chapter does not relieve the operator of an authorized emergency vehicle from:
(1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or
(2) the consequences of reckless disregard for the safety of others.

TEX. TRANSP. CODE ANN. § 546.005 (West 2011).

[4] (a) In this section, "9-1-1 service" and "public agency" have the meanings assigned those terms by Section 771.001, Health and Safety Code.

(b) This chapter applies to a claim against a public agency that arises from an action of an employee of the public agency or a volunteer under direction of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.062 (West 2011).

material facts are undisputed and demonstrate that the City retains its immunity to the claims asserted by Kahlden.

*Standard of Review*

The procedural posture in which a case is presented sometimes limits the form and nature of relief we can grant as well as the standard and scope of review. Because the City filed a motion for summary judgment and not a motion under section 101.106 of the Texas Civil Practice and Remedies Code for election of remedies or a plea to the jurisdiction, we are limited to reviewing the trial court's ruling on the motion for summary judgment; and the objections to and rulings on the summary judgment evidence control what evidence we may consider. The only exception to this general rule is when the governmental entity or its employee can assert a lack of jurisdiction for the first time on appeal; an instance where we are not reviewing anything the trial court did but rather are determining whether the trial court has jurisdiction at all, so long as the appellant has otherwise properly invoked this Court's jurisdiction. *See Univ. of Tex. Southwestern Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004) ("Not only may an issue of subject matter jurisdiction 'be raised for the first time on appeal by the parties or by the court', a court is obliged to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it." (footnote omitted)). Thus, contrary to the City's argument in its brief, because the City filed a motion for summary judgment rather than a plea to the jurisdiction, we review the trial court's decision to

grant or deny the motion pursuant to established standards of review of a motion for summary judgment.[5]

The summary judgment movant bears the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a traditional motion for summary judgment, as it appears the City filed, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We review the motion and the evidence de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* at 756; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Once a defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Talford v. Columbia Med. Ctr. at Lancaster Subsidiary, L.P.*, 198 S.W.3d 462, 464 (Tex. App.—Dallas 2006, no pet.); *Bosque Trading Enters. v. Business Loan Ctr., LLC*, No. 10-11-00016-CV, 2012 Tex. App. LEXIS 8595, *10 (Tex. App.—Waco Oct. 11, 2012, no pet.) (mem. op.).

---

[5] However, to some extent, the standard is the same since the Supreme Court has held that a review of the denial of a plea to the jurisdiction "generally mirrors" that of a motion for summary judgment. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Thus, unless the summary judgment rules provide a procedural hurdle that a plea to the jurisdiction does not, the standards are, in this instance, substantially the same.

*The Motion*

The City did not concede in its motion for summary judgment that its immunity was waived by section 101.021 of the Tort Claims Act for injuries or death proximately caused by an act, omission, or negligence of an employee if the injuries or death arose from the use of a motor driven vehicle. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011). Rather, it argued that even if immunity was waived by section 101.021 of the Act, the exceptions to the Act listed in sections 101.051-.066 of the Civil Practice and Remedies Code, specifically sections 101.055 and 101.062, govern the underlying incident and immunity is not waived. *Id*. §§ 101.055 and 101.062. In essence, the City asserts that these two statutes act as exceptions to the section 101.021 waiver of sovereign immunity.

*Section 101.055*

The City argued in its motion for summary judgment that it retained immunity because Elkins was reacting to an emergency situation as set forth in section 101.055 of the Tort Claims Act. As it applies to this proceeding, section 101.055 provides:

> This chapter [the Tort Claims Act] *does not apply* to a claim arising:
> * * *
> (2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

*Id*. at § 101.055(2) (bracketed information and emphasis added).

*Emergency Situation*

The City argues that the evidence it presented with its motion showed as a matter of law that Elkins was reacting to an emergency situation to remove debris from the road. Kahlden objected to some of the City's evidence, and that objection was sustained. Our recitation of the evidence does not include, and therefore, in accordance with summary judgment procedure, our opinion and judgment do not rely upon, that excluded evidence.

The City presented evidence that a motorist called 9-1-1 to report that there was something in a "bag" in the exit ramp which she and another driver had just run over because they could not avoid it. A motorist behind the caller had to swerve "real fast" to get around the bag. The motorist thought the bag would cause problems because it was located on a part of the roadway where some vehicles are entering the roadway and other vehicles are exiting the roadway; in essence what was both an acceleration ramp for persons entering the highway and a deceleration ramp for persons exiting the highway.

The call was then dispatched by being announced over the police radio and Elkins volunteered to take the call. Upon his initial arrival at the reported location, he could not find the "bag" but discovered that drivers were swerving to avoid a pair of boots on the (north bound) entrance/exit ramp of Highway 6 between Harvey Road and University Drive. An accident almost occurred in Elkins' presence involving two

vehicles trying to swerve around the debris, a pair of boots. He determined the debris, and the reaction of drivers to the debris, created an emergency situation. But because he could not safely stop when he first spotted the debris, he looped around on University Drive to then be able to return and re-approach where the debris was located. To make this second approach, Elkins took the Harvey Road exit, went under the Highway 6 overpass on Harvey Road, and came back onto the entrance ramp from Harvey Road onto Highway 6. Elkins slowed his patrol car and activated his amber directional lights to notify traffic behind him that he was slowing down to block the lane. As he neared the debris, he activated his overhead emergency lights and came to a complete stop. His overhead emergency lights were on for approximately twenty seconds prior to Elkins completely stopping and putting his vehicle into "park." Before Elkins exited his patrol car, his vehicle was struck from behind by Bayless's vehicle which was shoved forward when it was struck from behind by Striegler.

In response to the City's motion, Kahlden asserted that the situation to which Elkins was responding was not an emergency. Citing the memorandum opinion of *Jefferson County v. Hudson*, No. 09-11-00168-CV, 2011 Tex. App. LEXIS 6986 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.) as authority, Kahlden asserted that, in this type of case, a jury must resolve the fact issue of whether an emergency situation exists by considering both the government employee's subjective belief as well as whether a reasonably prudent officer could have believed these circumstances called for

immediate action. Kahlden argued that there was a disputed fact issue that Elkins did not subjectively believe "the two boots" created an emergency situation and that objectively, no reasonably prudent officer could have believed "the two boots" created an emergency situation.

In *Jefferson County*, the County filed a plea to the jurisdiction asserting that its officer was responding to an emergency situation; the plaintiffs filed a partial motion for summary judgment. The trial court granted the plaintiffs' motion for summary judgment and denied the plea to the jurisdiction. In two issues, the County claimed the trial court erred in denying its plea to the jurisdiction and in ruling as a matter of law that no emergency existed. After discussing the standard for reviewing a plea to the jurisdiction, what happens when the governmental unit raises the emergency situation exception, the facts submitted, and that "emergency situation" is not defined, the court simply concludes:

> There is at least a fact question at this stage, precluding the summary judgment the trial court granted for the plaintiffs, as to whether a reasonably prudent officer could have believed these circumstances called for immediate action.

*Jefferson County v. Hudson*, No. 09-11-00168-CV, 2011 Tex. App. LEXIS 6986, *10 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.).[6] There is no reference to a

---

[6] We note that the Court in *Jefferson County* was only addressing the granting of a summary judgment which held that Hudson had negated an "emergency situation" as a matter of law. It was not a question, as in this case, of whether the government had established its immunity by its summary judgment evidence.

subjective test, *i.e*, what the officer believed; only an objective test. Nowhere does the court cite any cases for the proposition that a reasonably prudent officer standard, the objective test, applies or that it is the entire test. Further, none of the cases cited by the court use that standard. We decline to follow the implied holding that the objective test is the only standard.

The word "emergency" is not defined in the Act. Because it is not defined in the statute, we give it its ordinary meaning. TEX. GOV'T CODE ANN. § 312.002 (West 2013); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006). The word, emergency, has been defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." Merriam-Webster Online Dictionary, available at http://www.merriam-webster.com/dictionary/emergency.

As the Texas Supreme Court has said in construing another exception to the Tort Claims Act, we must construe the statute according to what it says, not according to what we think, or a party thinks, it should have said. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006). The statute is designed to limit the government's liability when it is reacting to an emergency situation, which necessarily includes prioritizing some risks over others. *Id*. And because the Act first creates and then limits governmental liability where it would not otherwise exist, we cannot construe section 101.055 to exclude "emergencies" the Legislature might have intended to include as a limitation of the waiver of sovereign immunity. *See id*. There will be cases, such as this

one, in which the existence of an "emergency" might be challenged as "unclear;" but we cannot re-write this section to make its boundaries more distinct. *Id.*

Kahlden presented her expert's testimony by affidavit who opined that no reasonably prudent officer would have stopped to retrieve the boots.[7] But we have held that this is not the standard to use in determining whether an emergency situation existed. The undisputed evidence is that Elkins saw a near collision because of the boots. He considered this an emergency situation, and, using precautionary measures, Elkins stopped to remove the boots. Elkins thus determined that the situation required immediate action and he took action that was consistent with his determination that this was an emergency. He was taking action in response to it.

As we note in footnote 7, the affidavit of Kahlden's expert is conclusory in a number of aspects. The expert may take issue with the discretionary decisions made by Elkins about the way to remove the debris that would best balance all the associated risks including the risk that the evasive actions drivers were making could result in a collision before any other action could be taken versus the reduction of the duration of the risk if Elkins was immediately able to remove the debris acting as an impediment to the free flow of traffic. Upon Elkins's first approach, he made the determination he could not safely stop. He circled and, using emergency lights, stopped the flow of

---

[7] Kahlden's expert's testimony is conclusory and is not to be relied upon. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). This also shows the fundamental problem with the expert's testimony. It is not "the boots" that is the emergency situation; it is how the drivers were reacting when they came upon the debris in the roadway.

traffic so that the debris could be quickly removed. Little did Elkins know, or could have reasonably anticipated, that Striegler would completely overlook the large SUV that was slowing and that ultimately came to a stop in front of her. Rather than showing recklessness, all the evidence presented, other than the conclusory affidavit of Kahlden's expert, shows that Elkins acted in response to an emergency situation to safeguard the public and took reasonable efforts in the execution thereof and did so with due regard and deliberation in doing so for the safety of others.

Thus, we hold that the City established that Elkins was reacting to an emergency situation.

*Compliance with Laws and Ordinances*

The City also argues that the evidence it presented with its motion showed as a matter of law that Elkins' action of stopping on the roadway to remove the debris was in compliance with laws applicable to emergency action.

In its motion for summary judgment, the City asserted that section 546.001 of the Texas Transportation Code authorized Elkins to stop on the roadway to remove the debris. *See* TEX. TRANSP. CODE ANN. § 546.001 (West 2011). The operator of an authorized emergency vehicle is permitted to "park or stand, irrespective of another provision of this subtitle." *Id*. (1). Section 546.001 applies when the operator is directing or diverting traffic for public safety purposes. *Id*. § 546.002(b)(4) (West Supp.

2013). When stopping for the purpose of directing or diverting traffic for public safety purposes, the operator shall use audible or visual signals. *Id*. § 546.003 (West 2011).

The undisputed evidence established that Elkins was in an emergency vehicle and that he was "parked" or "standing" when the collision occurred. It is also undisputed that Elkins was using visual signals to direct or divert traffic around his location for public safety purposes. Like "emergency," the phrase, "public safety purpose" is not defined. But, just as the near miss collision to avoid the debris established that Elkins was reacting to an emergency situation, it also establishes that Elkins' stop and use of directional lights to remove the debris from the roadway was done for "public safety purposes." Thus, the City established by its undisputed evidence that the action taken by Elkins, that is, to stop in the roadway while activating amber directional signals, was in compliance with the laws applicable to emergency action, specifically sections 546.001-003 of the Texas Transportation Code.

Kahlden did not dispute that sections 546.001-003 were laws applicable to the emergency action. Kahlden focused, instead, on whether a fact issue existed to prove Elkins was reckless. In a combined argument against the applicability of either section 101.055 or 101.062, Kahlden argued that even if the officer was responding to an emergency call or reacting to an emergency situation, the jury still must decide whether the officer was reckless or violated a statute.

Kahlden argues that section 546.005 of the Texas Transportation Code, the Duty of Care provision, applied and that because Elkins operated the city vehicle with reckless disregard for the safety of others, neither section 101.062 nor 101.055 applied or that at least she had presented evidence that created a question about a material fact, whether Officer Elkins was reckless, that had to be determined by a fact finder. TEX. TRANSP. CODE ANN. § 546.005 (West 2011). Section 546.005 provides:

> This chapter does not relieve the operator of an authorized emergency vehicle from:
> (1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or
> (2) the consequences of reckless disregard for the safety of others.

*Id.*

Proof of lack of recklessness, however, is only necessary under section 101.055 if there is no other law or ordinance applicable to the emergency action. TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (West 2011) ("…or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]"). As we stated, Kahlden did not dispute that sections 546.001-003 were laws applicable to the emergency action.

Further, if the City was required to prove lack of recklessness under section 456.005 of the Texas Transportation Code regardless of whether there was another law or ordinance applicable to the emergency action with which Elkins complied, the second part of section 101.055(2) would be rendered meaningless. Courts are to avoid

interpreting statutes in such a way that renders provisions meaningless. *See Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 8-9 (Tex. 2000). Thus, because the City established by its undisputed evidence that the action taken by Elkins was in compliance with the laws applicable to emergency action, it was not required to prove that Elkins was not reckless pursuant to section 546.005 of the Texas Transportation Code.

CONCLUSION

The City proved that Elkins was reacting to an emergency situation and his action was in compliance with the laws applicable to the emergency action taken. Thus, the City proved an exception to the general waiver provision of the Tort Claims Act. Because the City proved the exception stated in section 101.055, we need not discuss whether it also proved the application of the exception stated in section 101.062.

Accordingly, the trial court erred in denying the City's motion for summary judgment. The trial court's order is reversed, and this case is remanded for further proceedings.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and remanded
Opinion delivered and filed March 27, 2014
[CV06]