**Affirmed and Opinion Filed June 9, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00295-CV**

**DAVID S. LOPEZ AND RICHARD HUMPHREY, Appellants**
**V.**
**FRANCISCO SOSA, Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-19-02681-E**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Molberg

Appellant David Lopez, in his official capacity as Chief Operating Officer of

Parkland Health & Hospital System, and appellant Richard Humphrey, in his official

capacity as Chief Financial Officer of Parkland, appeal the trial court's denial of

their second amended pleas to the jurisdiction, no evidence motions for summary

judgment, and Texas Medical Liability Act motion to dismiss. Because we conclude

the trial court did not err in denying the pleas and motions, we affirm in this

memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. Background

In 2018, appellee Francisco Sosa was taken to Parkland's emergency department following a car accident. Sosa was billed $53,233.81 for the treatment he received at Parkland and his insurer paid $31,877.03 of the invoice. In March 2019, Parkland filed a hospital lien pursuant to Chapter 55 of the Texas Property Code "upon any and all rights of action, suits, claims, counterclaims and demands of [Sosa] on account of personal injuries received." The lien listed the "name of party or parties alleged to be liable for damages arising from the injury" as unknown. An affidavit attached to the lien stated the unpaid amount was $6,323.15.

Sosa originally brought suit in May 2019 against Parkland and its Chief Operating Officer, Lopez, for claims arising out of his visit to Parkland's emergency department. Sosa alleged Lopez authorized Med-Data, Inc. to act as Parkland's agent and authorized Parkland employees to provide information to Med-Data "for the purpose of filing hospital liens[.]" Sosa alleged a $6,323.15 hospital lien was filed against him by Parkland on or about March 4, 2019. Sosa argued Lopez "acted without legal or statutory authority by filing said lien," as it was not in compliance with Chapter 55 of the property code in several respects, and accordingly, he sought a declaratory judgment that Parkland's hospital lien was invalid.

Parkland and Lopez filed pleas to the jurisdiction and motions to dismiss for lack of subject matter jurisdiction, which were denied by the trial court. They appealed to this Court, and we reversed as to Parkland and dismissed Sosa's claims

–2–

against the hospital but affirmed the denial of Lopez's plea to the jurisdiction, finding Sosa properly pleaded *ultra vires* claims against Lopez. *See Dallas Cnty. Hosp. Dist. v. Sosa (Sosa I)*, No. 05-19-01164-CV, 2020 WL 4581666, at *6 (Tex. App.—Dallas Aug. 10, 2020, pet. denied) (mem. op.).

On August 31, 2021, Sosa filed a second amended petition. He reiterated his claims against Lopez and made the same claims for the first time against Humphrey, Parkland's Chief Financial Officer. Sosa alleged Humphrey and Lopez authorized Med-Data to act as Parkland's agent "for purposes of collecting additional monies for services provided to" Sosa and they authorized Parkland employees to provide Sosa's patient account information to Med-Data "for the purpose of the filing of a hospital lien, which was performed on or about March 12, 2019." Sosa alleged Humphrey and Lopez, each in his official capacity, without legal or statutory authority, "authorized or permitted a hospital lien to be filed as Plaintiff was an insured patient;" "authorized or permitted the transfer of Plaintiff s account to MedData for the purpose of filing a hospital lien on behalf of Parkland, approximately six months after Parkland received payment from Plaintiff's health insurer, Blue Cross Blue Shield;" "authorized or permitted the filing a hospital lien despite Plaintiff not having been admitted into Parkland;" "authorized or permitted a hospital lien in the sum of $53,233.81, to be filed, said lien amount greatly exceeded the usual and customary charges for the services Plaintiff received in contravention to the Texas Hospital Lien Statute;" "authorized or permitted the

–3–

acceptance of the amount paid by Plaintiff's health insurer, $31,877.03, which exceeded the regular and reasonable rate customarily charged for services rendered to Plaintiff as permitted under the Texas Hospital Lien Statute;" and "the amount received by Parkland on Plaintiff's behalf, $31,877.03, was more than 50% of Plaintiff's third-party settlement of $57,485.98." Sosa sought a declaration that the hospital lien authorized by Humphrey and Lopez was invalid pursuant to §§ 55.002 and 55.004 of the property code.

On November 9, 2021, Lopez filed a second amended plea to the jurisdiction, arguing among other things that, following Lopez's deposition, Sosa could not maintain a viable *ultra vires* claim against him. Humphrey filed a second amended plea to the jurisdiction, arguing that the discretionary decisions alleged by Sosa did not amount to an *ultra vires* claim. Lopez and Humphrey also, in the alternative, presented their jurisdictional challenges through no evidence motions for summary judgment. Additionally, Lopez and Humphrey jointly filed a motion to dismiss pursuant to § 74.351(a) of the civil practice and remedies code, arguing Sosa's suit alleged health care liability claims requiring an expert report, which Sosa failed to serve on them. The trial court denied the two pleas to the jurisdiction, the no evidence motions for summary judgment, and the Chapter 74 motion to dismiss. This appeal followed.

## II. Discussion

–4–

Lopez argues he had no role in the actions challenged by Sosa, and that his deposition, given subsequent to our prior opinion in this case, confirms he did not have authority over the actions that form the basis of Sosa's claims. Lopez and Humphrey also argue Sosa's allegations cannot support an *ultra vires* claim because they involve the exercise of discretion. They argue the filing of a hospital lien, determining how a patient account is handled, determining whether a patient was admitted to the hospital, and setting hospital charges are all discretionary actions. They further argue Sosa did not allege an *ultra vires* claim because it was a "practical impossibility" for a lien to have been filed in violation of Chapter 55 in the manner alleged by Sosa. Alternatively, Lopez and Humphrey argue the trial court erred in denying their motions for summary judgment because Sosa presented no evidence establishing subject matter jurisdiction. Finally, Lopez and Humphrey argue the trial court erred by denying their motion to dismiss under the Texas Medical Liability Act.

### A. Pleas to the jurisdiction and no evidence summary judgment motions

1. Applicable law

Generally, immunity from suit implicates courts' subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). Because subject matter jurisdiction is a question of law, we review de novo a trial court's

–5–

ruling on a plea to the jurisdiction. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015). Jurisdiction may also be challenged by a no evidence motion for summary judgment. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). "After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The motion should be granted unless the nonmovant produces evidence raising a genuine issue of material fact. *Id.* We view the jurisdictional evidence in the light most favorable to the nonmovant. *Swanson*, 590 S.W.3d at 552. The plaintiff has the burden to demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

Sovereign immunity protects the state and its agencies from suit and liability, while governmental immunity provides a similar protection to the political subdivisions of the state. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). This immunity deprives a trial court of subject matter jurisdiction for suits where certain governmental units have been sued, unless the state has consented to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Immunity does not, however, bar an *ultra vires* suit, which is brought against a government officer for acting outside his or her authority or for failure to perform a purely ministerial act. *Houston Belt*, 487 S.W.3d at 161.

Governmental immunity does not protect every act by a government officer that requires some exercise of judgment or discretion; an officer with some discretion may nevertheless act *ultra vires* "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id*. at 158. This exception to governmental immunity is justified because acts made without legal authority should not be considered acts of the state at all. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Thus, *ultra vires* suits properly understood do not seek to control the state but "'to reassert the control of the state' over one of its agents." *Id*. (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).

2. Analysis

Lopez first argues that his deposition testimony made clear he had no involvement with or authority over the actions forming the basis of Sosa's claims. In pertinent part, Lopez testified that, though he was no longer employed at Parkland, his former responsibilities as Chief Operating Officer were "very broad" and included overseeing the management of departments such as radiology, pharmacy, laboratory, respiratory care, facilities, housekeeping, and nutrition services, but did not include finance and nursing. Lopez said the finance department was in charge of setting prices for services. Lopez did not know why Parkland switched collection services from Meridian Services to MedData, and he was unfamiliar with the relationship between Parkland and MedData. He said Humphrey—as Chief Financial Officer—or "his designee responsible" would be the person to speak with

–7–

regarding how Parkland's patient billing files are transferred to MedData. Thus, Lopez argues, he was a "nominal, apex representative" who had nothing to do with the action and an *ultra vires* action could not be brought against him. *See Hall*, 508 S.W.3d at 240. Sosa responds that this question was resolved in the appeal of the denial of Lopez's first plea to the jurisdiction.

We agree with Sosa. Previously, we reviewed this claim when the trial court had before it Lopez's affidavit, in which he stated his responsibilities included managerial oversight of the operations division but did not include "the setting of the amount of charges for the various treatments and services offered by Parkland or with the billing of Parkland's charges." He then stated he had no role in approving Parkland's charges for its services or in filing hospital liens, and had no contact with Parkland's "vendors responsible for the investigation and filing of hospital liens" or any role in the business relationship between Parkland and the relevant vendors. Lopez also stated he had no role specifically as to Sosa's treatment, charges, billing, or hospital lien. On those facts, we acknowledged Lopez "denied any role in the instant lien and in general determining amounts of charges or filing or authorizing the filing of hospital liens" but nevertheless observed that "nowhere in his affidavit or job description does Lopez deny the *legal authority* to file or authorize the filing of hospital liens, to determine charges for services and treatments provided by Parkland, to cause other employees to confirm that charges for services are 'reasonable and regular,' or direct employees to file, release or reform a lien." *Sosa*

–8–

*I*, 2020 WL 4581666, at *5 (emphasis added). We concluded Sosa properly pleaded *ultra vires* claims against Lopez. *Id*. at *6.

Lopez's deposition testimony effectively reiterated what he previously stated in his affidavit. He testified that his responsibilities were broad but did not include finance, and did not include overseeing the finance department. Thus, we again must conclude that, although Lopez disclaimed any responsibility for setting prices, billing patients, or filing hospital liens—and denied any role in the specific facts alleged by Sosa—Lopez did not deny the legal authority to file or authorize the filing of hospital liens, to determine charges for services and treatments provided by Parkland, to cause other employees to confirm that charges for services are "reasonable and regular," or direct employees to file, release or reform a lien. *See id*. at *5–6. We conclude Sosa properly pleaded *ultra vires* claims against Lopez.

Second, Lopez and Humphrey argue the actions alleged by Sosa were discretionary in nature and thus could not be the basis for an *ultra vires* suit. To reiterate, Sosa seeks a declaratory judgment against Lopez and Humphrey, specifically seeking a declaration that Parkland's hospital lien is invalid under § 55.002 of the property code because he was not admitted to the hospital, and under § 55.004 because Parkland has received an amount for Sosa's treatment that exceeded the reasonable and regular rate for the services provided. Sosa generally alleges Lopez and Humphrey authorized or permitted the lien to be filed against

–9–

him.[1]  Lopez and Humphrey argue that the allegation they erred in authorizing the lien claiming amounts that were not reasonable and regular implicates only a "discretionary determination."

We reject Lopez and Humphrey's contention.  As the supreme court observed in *Houston Belt*, "governmental immunity bars suits complaining of an exercise of *absolute* discretion but not suits complaining of *either* an officer's failure to perform a ministerial act or an officer's exercise of judgment or *limited* discretion without reference to or in conflict with the constraints of the law authorizing the official to act."  487 S.W.3d at 163.  Here, Sosa's allegations complain of Lopez's and Humphrey's exercise of limited discretion in authorizing or permitting the hospital lien to be filed, arguing their actions conflicted with the constraints of the law authorizing them to act.

Chapter 55 of the property code grants a lien right to a hospital that treats an individual for injuries caused by an accident attributed to the negligence of another person.  *See* TEX. PROP. CODE § 55.002(a).  The property code limits a hospital's

---

[1] Sosa alleged Lopez and Humphrey, without legal authority, (1) authorized or permitted a hospital lien to be filed against Sosa, who was an insured patient; (2) authorized or permitted the transfer of Sosa's account to MedData for the purpose of filing a hospital lien on behalf of Parkland, about six months after Parkland received payment from Sosa's health insurer; (3) authorized or permitted the filing a hospital lien despite Sosa not having been admitted to Parkland; (4) authorized or permitted a hospital lien to be filed in the sum of $53,233.81, which greatly exceeded the usual and customary charges for the services Sosa received, in contravention to the Texas Hospital Lien Statute; (5) authorized or permitted the acceptance of the amount paid by Sosa's health insurer, $31,877.03, which exceeded the regular and reasonable rate customarily charged for services rendered to Sosa as permitted under the Texas Hospital Lien Statute; and (6) the amount received by Parkland on Sosa's behalf, $31,877.03, was more than 50% of Sosa's third-party settlement of $57,485.98.

authority in filing such a lien in several ways. As pertinent here, under § 55.002(a), "For the lien to attach, the individual must be admitted to a hospital not later than 72 hours after the accident." TEX. PROP. CODE § 55.002(a). Additionally, a hospital lien under § 55.002(a) does not cover "charges for other services that exceed a reasonable and regular rate for the services[.]" *Id*. § 55.004(d)(1).

In granting Parkland the authority to file a lien while constraining its authority to do so in particular ways, Chapter 55 of the property code is similar to the statutory schemes at issue in *Henrich* and *Houston Belt*. In *Heinrich*, the widow of an El Paso police officer sued, among others, the officers' pension fund's board of trustees and the mayor after the board reduced her monthly survivor benefits when her son reached a certain age. *Heinrich*, 284 S.W.3d at 369. She sought declaratory relief, alleging the defendants violated the statute governing the pension fund by reducing her benefits retroactively. *Id*. The supreme court concluded that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity" while acknowledging *ultra vires* suits cannot complain of exercises of discretion. *Id*. at 372. Instead, they must allege an officer acted without legal authority or failed to perform a purely ministerial act. *Id*. The court stated that the board, under the pertinent statute, had no discretion to retroactively lower pensions. *Id*. at 379. The widow's suit against the board members and the mayor in their official capacities was therefore permitted to go forward. *Id*. at 380.

–11–

The court in *Houston Belt* summarized *Heinrich* as follows: "Heinrich alleged that the officers, making the type of determination which they had authority to make, made that determination in a way the law did not allow." 487 S.W.3d at 162. Similarly, in *Houston Belt*, the City of Houston's Director of Public Works and Engineering was given authority, by city ordinance, to administer a "pay-as-you-go" drainage fee system. *Id*. at 158. The ordinance defined certain terms, such as "benefitted property" and "impervious surface." *Id*. at 159. After receiving notice of proposed charges under the ordinance, Houston Belt eventually sued the city and the director, alleging the director "had improperly proposed charges on properties that were not benefitted and on surfaces that were not impervious." *Id*. The supreme court concluded that nothing in the ordinance suggested the director had absolute discretion to make determinations about what was a "benefitted property" or an "impervious surface." *Id*. at 167–68. Accordingly, Houston Belt alleged viable *ultra vires* claims against the director. *Id*. at 169.

It is true, as Lopez and Humphrey argue, that not every legal mistake is an *ultra vires* act. *See Hall*, 508 S.W.3d at 241. In *Hall*, the university system regent plaintiff, Hall, sought a declaration that the chancellor defendant, McRaven, acted *ultra vires* in refusing to provide him unredacted student records. *Id*. at 237. The supreme court observed that an *ultra vires* suit could only compel McRaven to follow his governing authority, not change it. *Id*. at 240. The court concluded Hall failed to allege a proper *ultra vires* claim because an official making an error while

–12–

staying within his or her authority is not an *ultra vires* act. *Id*. at 242–43. In interpreting and applying federal privacy law, even if erroneously, McRaven was not applying the law authorizing him to act, he was applying a collateral law; thus, he was not acting without legal authority in erroneously applying a collateral law. *Id*.

The claim in *Hall* differed from the one in *Houston Belt* in two ways. First, in *Houston Belt*, the director's alleged misinterpretation was of the requirements of the law authorizing him to act, so he allegedly exceeded the scope of what the city permitted him to do. *Id*. at 241. On the other hand, McRaven's interpretation did not relate to his authority but to federal privacy law, which was merely collateral to McRaven's authority. *Id*. at 242. The court concluded that, in order to act without legal authority in interpreting and applying the privacy law, McRaven must have exercised discretion without reference to or in conflict with the constraints of the law authorizing him to act. *Id*. Second, in *Houston Belt*, the director's determination was subject to explicit constraints, while McRaven's only duty was to determine whether a Regent may review information protected by privacy laws. *Id*. In other words, McRaven's discretion to interpret collateral federal privacy law was "absolute" under the *Houston Belt* framework. *Id*. at 243.

The same cannot be said here. Instead, as in *Houston Belt*, the law authorizing Lopez and Humphrey to act also constrained them from acting in particular ways; as in *Heinrich*, Sosa alleged that the officers, taking the type of action they had the

–13–

authority to take, did so in a way the law did not allow. Section 55.004 states that a hospital lien may include "the amount of a physician's reasonable and necessary charges for emergency hospital care services provided to the injured individual" but does not include charges "for other services that exceed a reasonable and regular rate for the services." *See* TEX. PROP. CODE § 55.004(c), (d)(1). Thus, Sosa's allegation that Lopez and Humphrey erred in authorizing a hospital lien to be filed based on rates that were not the reasonable and regular rates customarily charged is an allegation that Lopez and Humphrey acted in conflict with the constraints of the law authorizing them to act.[2] *See Sosa I*, 2020 WL 4581666, at *7. Accordingly, we conclude the trial court did not err in denying Lopez's and Humphrey's amended pleas to the jurisdiction.

For the same reasons, we conclude the trial court did not err in denying Lopez and Humphrey's no evidence motions for summary judgment. The evidence before the trial court showed that Lopez had broad authority as Chief Operating Officer, and Humphrey was Chief Financial Officer at Parkland. Nothing demonstrates Lopez had no legal authority relating to hospital liens, and nothing before us demonstrates that Humphrey or someone else had exclusive legal authority relating to the filing of hospital liens. *See id.* Viewing the evidence in the light most

---

[2] Because we conclude these allegations support an *ultra vires* claim, we do not need to address whether the allegation that Lopez and Humphrey erred in authorizing the lien for treatment provided in the emergency room or Sosa's other allegations support an *ultra vires* claim. *See Sosa I*, 2020 WL 4581666, at *7 n.9; TEX. R. APP. P. 47.1.

favorable to Sosa, we conclude fact questions exist about which officer may have had legal authority relating to the authorizing and filing of hospital liens and Sosa's related allegations. Accordingly, we conclude the trial court did not err by denying Lopez's and Humphrey's no evidence summary judgment motions challenging the trial court's subject matter jurisdiction.

## B. *TMLA motion to dismiss*

In their motion to dismiss pursuant to the Texas Medical Liability Act, Lopez and Humphrey argued Sosa's suit should be dismissed for failure to file an expert report under § 74.351(a) of the civil practice and remedies code. We review a trial court's decision on a § 74.351 motion to dismiss for an abuse of discretion. *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 490 (Tex. App.—Dallas 2010, no pet.).

A claimant must, in a health care liability claim, serve on the defendant or its attorney, not later than the 120th day after the defendant's original answer is filed, one or more expert reports, with a curriculum vitae for each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM. CODE § 74.351(a). A claimant is a person, including a decedent's estate, seeking recovery of damages in a health care liability claim. *Id*. § 74.001(a)(2). A health care liability claim is a cause of action against a health care provider or physician "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in

–15–

injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id*. § 74.001(a)(13). The supreme court has divided this statutory definition into three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).

Sosa did not serve on Lopez and Humphrey an expert report relating to his claims, so the question here is whether he was required to do so under § 74.351(a). Sosa argues he was not required to file such a report because Lopez and Humphrey are not health care providers; Sosa does not seek damages and thus is not a "claimant" under Chapter 74; Sosa does not claim he suffered an injury; and his claim does not implicate Lopez and Humphrey's conduct during the course of Sosa's care, treatment, or confinement given that the hospital lien was filed about ten months after Sosa's emergency department visit.

Because we conclude on the record before us that Sosa is not a "claimant" within the meaning of the TMLA, we conclude the trial court did not err in denying the Chapter 74 motion to dismiss. As stated above, claimant "means a person, including a decedent's estate, *seeking* or who has sought *recovery of damages* in a health care liability claim." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2) (emphasis

added).  "Economic damages" and "noneconomic damages" are both defined by the act to have the meaning assigned by § 41.001, *see id*. § 74.001(a)(6), (a)(20), which defines economic damages as "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages," and noneconomic damages as "damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages[,]" *see id*. § 41.001(4), (12).

Here, Sosa seeks declaratory relief; he does not seek to recover damages. Consequently, he is not a claimant within the meaning of the medical liability act, and he was not required to file the expert report required by § 74.351(a). *See McAllen Hosps., L.P. v. Gomez*, No. 13-12-00421-CV, 2013 WL 784688, at *6 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, no pet.) (mem. op.) (concluding plaintiff, with respect to his claim seeking a declaration that a hospital lien was invalid, was not a "claimant" under TMLA because he sought "declaratory relief, not an award of damages").  Notably, this is not a case in which the plaintiff seeks damages *and also* seeks declaratory relief, which we previously concluded compels a different result than the one we reach today.  *See Tinnard v. Dallas Cnty. Hosp. Dist.*, No. 05-13-01161-CV, 2015 WL 273123, at *5 (Tex. App.—Dallas Jan.

–17–

22, 2015, no pet.) (mem. op.) (when plaintiff sued heath care providers under the tort claims act seeking actual, statutory, and punitive damages, he was a claimant seeking damages under the TMLA, and the "fact that [the plaintiff] also filed a claim for declaratory relief does not alter the underlying nature of his lawsuit, and his claim cannot be divided into both a health care liability claim and another type of claim"). Sosa seeks only a judicial declaration under Chapter 37 that the hospital lien allegedly authorized by Lopez and Humphrey is invalid, and he seeks attorney's fees under § 37.009—he does not seek to recover damages. *E.g.*, *CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *15 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.) ("attorney's fees are not ordinarily considered as an element of damages").

Lopez and Humphrey argue in their reply brief that supreme court precedent forecloses the foregoing; they cite *Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 666–67 (Tex. 2020). In that case, the plaintiff argued that because it alleged economic damages and not physical injury, the TMLA did not apply. *Id.* The supreme court rejected this argument, noting it had previously held "that claims alleging the negligent provision of health care fall within the Act when the alleged damages stem from health-care-related claims, regardless of the type of injury alleged." *Id.* (citing *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 537 (Tex. 2016)). The act does not qualify the type of "injury" to which it applies, and it does not limit the definition of injury to bodily injury. *Id.* We do

–18–

not think this discussion of the meaning of "injury" within the definition of a "health care liability claim" affects our analysis of whether, under the facts of this case, Sosa is a "claimant," which turns not on the type of damages alleged but on whether any damages were alleged. Because Sosa does not seek damages, he cannot be a "claimant" under the TMLA. We conclude the trial court did not err in denying Lopez and Humphrey's Chapter 74 motion to dismiss.

### III. Conclusion

Having overruled Lopez and Humphrey's three issues on appeal, we affirm the judgment of the trial court.

220295f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DAVID S. LOPEZ AND RICHARD
HUMPHREY, Appellants

No. 05-22-00295-CV     V.

FRANCISCO SOSA, Appellee

On Appeal from the County Court at
Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-19-02681-
E.
Opinion delivered by Justice
Molberg. Justices Partida-Kipness
and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee FRANCISCO SOSA recover his costs of this
appeal from appellants DAVID S. LOPEZ AND RICHARD HUMPHREY.

Judgment entered this 9th day of June 2023.